# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Cathy Przyjemski

**DEFENDANTS**
Reading Hospital
Tower Health

**(b)** County of Residence of First Listed Plaintiff   Berks County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Berks County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ~~Attorneys~~ *(Firm Name, Address, and Telephone Number)*
Caren N. Gurmankin, Esq., Console Mattiacci Law,
1525 Locust Street, 9th Fl., Philadelphia, PA 19102

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. §623, et seq.
Brief description of cause:
Plaintiff was discriminated against based on her age.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
in excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
1/31/2022

SIGNATURE OF ATTORNEY OF RECORD

---

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Mohnton, PA 19540 _____

Address of Defendant: _____ Reading, PA 19611 _____

Place of Accident, Incident or Transaction: _____ Reading, PA 19611 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? — Yes [ ] No [✓]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? — Yes [ ] No [✓]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? — Yes [ ] No [✓]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? — Yes [ ] No [✓]

I certify that, to my knowledge, the within case [ ] is / [•] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 01/31/2022 _____ *Attorney-at-Law / Pro Se Plaintiff* _____ 205900
_____ *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

1. [ ] Indemnity Contract, Marine Contract, and All Other Contracts
2. [ ] FELA
3. [ ] Jones Act-Personal Injury
4. [ ] Antitrust
5. [ ] Patent
6. [ ] Labor-Management Relations
7. [✓] Civil Rights
8. [ ] Habeas Corpus
9. [ ] Securities Act(s) Cases
10. [ ] Social Security Review Cases
11. [ ] All other Federal Question Cases
    *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

1. [ ] Insurance Contract and Other Contracts
2. [ ] Airplane Personal Injury
3. [ ] Assault, Defamation
4. [ ] Marine Personal Injury
5. [ ] Motor Vehicle Personal Injury
6. [ ] Other Personal Injury *(Please specify):* _____
7. [ ] Products Liability
8. [ ] Products Liability – Asbestos
9. [ ] All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Caren N. Gurmankin _____, counsel of record *or* pro se plaintiff, do hereby certify:

[X] Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[X] Relief other than monetary damages is sought.

DATE: 01/31/2022 _____ *Attorney-at-Law / Pro Se Plaintiff* _____ 205900
_____ *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Cathy Przyjemski | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Reading Hospital, et al. | : | |
| | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.         ( X )

| | | |
|---|---|---|
| 1/31/2022 | *[signature]* | Plaintiff, Cathy Przyjemski |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-405-2900 | gurmankin@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| _____ | : | |
| **CATHY PRZYJEMSKI** | : | |
| **Mohnton, PA 19540** | : | |
| | : | **CIVIL ACTION NO.** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **READING HOSPITAL** | : | |
| **420 S. 5th Avenue** | : | |
| **West Reading, PA  19611** | : | |
| | : | |
| **and** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **TOWER HEALTH** | : | |
| **420 S. 5th Avenue West** | : | |
| **Reading, PA 19611** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

## COMPLAINT

## I.   INTRODUCTION

Plaintiff, Cathy Przyjemski, brings this action against her former employers,

Tower Health and Reading Hospital (together "Defendants").  After over sixteen (16)

years of excellent performance, Plaintiff separated from her employment when it became

clear that Defendants wanted her out based on her age and that they were not going to

take any action regarding her repeated complaints that she was being discriminated

against based on her age.  Defendants' unlawful conduct towards Plaintiff violated the

Age Discrimination in Employment Act, as amended, 29 U.S.C. § 623 *et seq.* ("ADEA")

and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA").

II.  **PARTIES**

1.      Plaintiff, Cathy Przyjemski, is an individual and a citizen of the Commonwealth of Pennsylvania.  She resides in Mohnton, PA 19540.

2.      Plaintiff was employed with Defendants for over sixteen (16) years.

3.      As of the time of her separation from employment, in August 2020, Plaintiff was fifty six (56) years old.

4.      Defendant, Reading Hospital, is an entity with a principal place of business at 420 South 5th Avenue, West Reading, PA 19611.

5.      Defendant, Tower Health, is an entity with a principal place of business at 420 South 5th Avenue, West Reading, PA 19611.

6.      Defendant, Reading Hospital, was the entity that paid Plaintiff.

7.      The website for Defendant Tower Health indicates that its address is the same as that for Defendant Reading Hospital, 420 South 5th Avenue, West Reading, PA 19611.

8.      The website for Defendant Tower Health states that it consists of, *inter alia*, Reading Hospital.

9.      The website for Defendant Tower Health includes Defendant Reading Hospital among its locations.

10.     The website for Defendant Tower Health includes that Defendant Reading Hospital "is the flagship, Magnet Recognized, acute care hospital of Tower Health."

11.     At all times material hereto, Defendants acted by and through their

2

authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

12.    At all times material hereto, Defendants acted as employers within the meaning of the statutes which form the basis of this matter.

13.    At all times material hereto, Plaintiff was an employee of Defendants within the meaning of the statutes which form the basis of this matter.

### III.    <u>JURISDICTION AND VENUE</u>

14.    The causes of action which form the basis of this matter arise under the ADEA and the PHRA.

15.    The District Court has jurisdiction over Count I (ADEA) pursuant to 29 U.S.C. §626(c) and 28 U.S.C. §1331.

16.    The District Court has supplemental jurisdiction over Count II (PHRA) pursuant to 28 U.S.C. §1367.

17.    Venue is proper in the District Court under 28 U.S.C. §1391(b).

18.    On or about October 20, 2020, Plaintiff filed a Complaint with the PHRC, complaining of acts of discrimination and retaliation alleged herein.  Her Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC").  Attached hereto, incorporated herein and marked as Exhibit "1" is a true and correct copy of the PHRC Complaint (with personal identifying information redacted).

19.    On or about November 4, 2021, the EEOC issued to Plaintiff a Dismissal and Notice of Rights for her PHRC Complaint.  Attached hereto, incorporated herein and marked as Exhibit "2" is a true and correct copy of that notice (with personal identifying information redacted).

20.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

IV.     **FACTUAL ALLEGATIONS**

21.     Plaintiff was hired by Defendant Reading Hospital on or about February 24, 2004.

22.     In or about September 2017, Defendant Reading Hospital became part of Defendant Tower Health.

23.     As of the time of Plaintiff's separation from employment, she had more than sixteen (16) years of service with Defendants.

24.     As of the time of Plaintiff's separation from employment, she held the position of Business Development and Marketing Specialist.

25.     Starting in around February 2019, Plaintiff reported directly to Maria Kammetler, Director of Marketing.  Kammetler reported to Lisa Hess, Vice President of Marketing.  Hess reported directly to Daniel Ahern, Executive Vice President, Business Development and Strategy.

26.     Plaintiff consistently performed her job duties in a highly competent manner.  By way of example only, Plaintiff was promoted twice during her employment.  By way of further example, Plaintiff's 2018 performance review included the following comments:

(a)     "Outside of Cathy's scope of responsibilities, she stepped up to the 'plate' and took the lead on the celebrations of the Tower Health brand launch at the new Tower Health hospitals + Reading Hospital.  She coordinated outside vendor support and stayed within budget and on time."

(b)     "As noted above, Cathy played a leadership role in the launch of Tower health, internally and externally.  In addition, she made every effort to implement tactical plans to meet the ISFP growth goals for CT surgery and cardiology, but was

limited by operational barriers.  Her leadership of the HELP line ensures those seeking a physician referral or other information about Reading Hospital and now Tower Health have a positive experience."

(c)    "Cathy continues to demonstrate her ability to integrate the strategic priorities of the health system into the operation of the HELP line, and into her cardiac, vascular, and CT surgery service line marketing."

27.    Defendants' conduct demonstrated a bias against older employees, including Plaintiff.  Defendants' age discriminatory treatment included the following:

(a)    Kammetler told Plaintiff that Hess said that another employee called Plaintiff part of the "old guard" at Defendants;

(b)    Hess was unjustly and overly critical of Plaintiff's performance in a way that she was not with younger employees;

(c)    Kammetler told Plaintiff that Hess has never had a kind word for her;

(d)    Kammetler told Plaintiff that Hess always looked for reasons to pick on Plaintiff;

(e)    Kammetler told Plaintiff that Hess pressured her to place Plaintiff on a PIP, but that Kammetler refused because there was no justification for the same.

28.    In or around late March 2020, Plaintiff complained to Kammetler that Hess "[c]learly prefers to have a much younger group and it doesn't matter how much I prove myself, it will never be good enough" and that Hess treated her differently than the rest of the group, all of whom were younger, to Plaintiff's knowledge and belief.

29.    To Plaintiff's knowledge and belief, Defendants did not take action regarding her complaints to Kammetler about Hess' age discriminatory bias and conduct.

30.    On or about April 21, 2020, Defendants placed Plaintiff on furlough.

31.    When Defendants placed Plaintiff on furlough, they gave her a letter from Clint Matthews, who was identified as President & CEO of Tower Health.

32.    The letter from Defendant Tower Health's President & CEO Matthews

5

included that, "[e]mployees who are put on furlough as a result of the COVID-19 pandemic are still employed by Tower Health" and "will also remain covered by Tower Health benefits if they are currently enrolled."

33.    Attached to Defendant Tower Health's President & CEO Matthews' letter was a memorandum addressed to "All Tower Health Employees" from Russell Showers, Senior Vice President, Chief Human Resources Officer, regarding "Health and Wellness Resources During COVID-19" and advising of the "health and wellness resources that are available to you as an employee of Tower Health."

34.    As of the time of Plaintiff's furlough, there were three (3) Business Development and Marketing Specialists reporting directly to Kammetler.

35.    Of the three (3) Business Development and Marketing Specialists reporting to Kammetler as of April 2020, Plaintiff was, to her knowledge and belief, by far the oldest.

36.    Of the three (3) Business Development and Marketing Specialists reporting to Kammetler as of April 2020, Plaintiff was, to her knowledge and belief, the longest-tenured with Defendant Reading Hospital.

37.    Of the employees reporting directly to Kammetler as of April 2020, Plaintiff was, to her knowledge and belief, by far the oldest.

38.    Of the employees reporting directly to Kammetler as of April 2020, Plaintiff was the longest-tenured with Defendant Reading Hospital.

39.    To Plaintiff's knowledge and belief, she was the only Business Development and Marketing Specialist reporting to Kammetler whom Defendants placed on furlough.

40.    On or about June 25, 2020, Defendants hired an individual from outside the company into an open position of Business Development and Marketing Specialist, reporting to Kammetler.  That individual was substantially younger than Plaintiff.

41.    No one at Defendants gave Plaintiff any explanation as to why they filled an open position of Business Development and Marketing Specialist while she was furloughed and why they did not just recall Plaintiff to work instead of hiring another employee.

42.    On or about June 23, 2020, Defendants called Plaintiff to return to work from furlough effective June 29, 2020.

43.    On that same day that Plaintiff returned to work following her furlough, she was placed on a forty five (45) day Performance Improvement Plan ("PIP").

44.    Kammetler told Plaintiff that she believed that Defendants placed her on the PIP because, if they had laid off Plaintiff while she was furloughed, Hess would have lost her position but, if she brought Plaintiff back to work and then terminated her for performance reasons, she would be able to retain the position and hire someone else to fill it.

45.    Plaintiff complained to Kammetler that she was placed on the PIP based on her age and that Defendants were hiring employees who were substantially younger than she was.

46.    Kammetler told Plaintiff that Hess made the decision to place Plaintiff on the PIP and that Kammetler did not agree with the decision.

47.    To Plaintiff's knowledge and belief, Defendants did not take action regarding Plaintiff's complaint of age discrimination that she had made to Kammetler.

48.     On or about July 7, 2020, Plaintiff complained, again, regarding the age discriminatory conduct to which she was being subjected.

49.     At that time, Plaintiff told Erin Schultz (33), Human Resources Business Partner, that she did not have performance issues that would support her being placed on a PIP and that Kammetler had told her that she did not support Plaintiff being placed on a PIP.

50.     Plaintiff told Schultz that she felt that she was being discriminated against based her age, that Defendants had recently hired other Business Development and Marketing Specialists that were substantially younger than she was, and that she felt that Defendants, through Hess, were trying to force her out of her employment.

51.     To Plaintiff's knowledge and belief, Defendants did not take action regarding Plaintiff's complaint of age discrimination.

52.      On or about July 10, 2020, Hess told Plaintiff that Defendants had terminated Kammetler's employment and that her PIP was withdrawn.

53.     On that same day, Plaintiff also learned that Defendants had promoted Chrystal Schardt into the position of Interim Director of Marketing to replace Kammetler.

54.     Prior to Schardt's promotion, she had held the same position as Plaintiff, that of Business Development and Marketing Specialist.

55.     Defendants did not post the position into which they promoted Schardt.

56.     Schardt was substantially younger than Plaintiff.

57.     Plaintiff was more qualified than Schardt for the position of Interim Director of Marketing.

58.     Defendants did not give Plaintiff any explanation as to why they did not

promote her into the position of Interim Director of Marketing.

59.    After Schardt's promotion, Plaintiff began reporting directly to her.

60.    Defendants continued to subject Plaintiff to hostile treatment.  The same included, but was not limited to, the following:

(a)    Schardt and Hess unjustly criticized Plaintiff's performance;

(b)    Schardt and Hess criticized Plaintiff in ways that, to Plaintiff's knowledge and belief, they did not do with younger employees;

(c)    Plaintiff was assigned projects and assignments that Defendants knew she would not be able to complete within the deadlines that she was assigned.

61.    On or about July 25, 2020, Plaintiff was issued an "Expectations" document which outlined twelve (12) expectations and duties that Plaintiff was told that she was expected to perform or she could be subjected to "further disciplinary action and/or termination."

62.    The "Expectations" document that Defendants issued to Plaintiff falsely suggested that she was not performing the expectations and duties of her job.

63.    When Plaintiff signed the "Expectations" document to acknowledge receipt of the same, she wrote that she disagreed that the document was necessary and that she believed that she was given the same based on her age.

64.    No one at Defendants responded to Plaintiff's complaint of discrimination that she included on the "Expectations" document when she signed the same.

65.    Defendants continued to unjustly criticize Plaintiff's performance and act dismissively towards her.

66.    On or about August 25, 2020, Defendants gave Plaintiff a poor

performance review.  Ratings and comments in the review were not justified and were not a reflection of Plaintiff's actual performance.

67.     It was clear to Plaintiff that Defendants had been trying to push her out due to her age and her complaints about age discriminatory conduct, and that they would continue to do so until they terminated her employment or until she resigned.  As such, on or about August 26, 2020, Plaintiff resigned her employment.

68.     Plaintiff included in her written resignation that she had been subjected to a hostile work environment that was driven by Hess.

69.     Despite Plaintiff's over sixteen (16) year employment history with Defendants, Defendants did not take any action to talk to her about her allegations about a hostile work environment or her resignation.

70.     To Plaintiff's knowledge and belief, Defendants assigned her job duties and responsibilities to substantially younger employees.

71.     With Plaintiff's resignation, the demographics of the group reporting directly to Schardt, and indirectly to Hess, became substantially younger.

72.     Plaintiff's age was a motivating and determinative factor in connection with Defendants' discriminatory treatment of Plaintiff, including placing Plaintiff on furlough, failing to promote Plaintiff, subjecting Plaintiff to a hostile work environment, placing Plaintiff on a PIP, and giving Plaintiff a poor performance review.

73.     Plaintiff's complaints of discriminatory conduct were motivating and/or determinative factors in connection with Defendants' retaliatory conduct to which Plaintiff was subjected, including failing to promote Plaintiff, subjecting Plaintiff to a hostile work environment, and giving Plaintiff a poor performance review.

74.     Defendants failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

75.     The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

76.     As a direct and proximate result of the discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

## **COUNT I - ADEA**

77.     Plaintiff incorporates herein by reference paragraphs 1 through 76 above, as if set forth herein in their entirety.

78.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the ADEA.

79.     Said violations were willful and warrant the imposition of liquidated damages.

80.     As a direct and proximate result of Defendants' violation of the ADEA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

81.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

82.    No previous application has been made for the relief requested herein.

## COUNT II - PHRA

83.    Plaintiff incorporates herein by reference paragraphs 1 through 82 above, as if set forth herein in their entirety.

84.    Defendants, by the above improper, discriminatory and retaliatory acts, have violated the PHRA.

85.    Said violations were intentional and willful.

86.    As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorney's fees and costs.

87.    Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

88.    No previous application has been made for the relief requested herein.

# RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

        (a)     declaring the acts and practices complained of herein to be in violation of the ADEA;

        (b)     declaring the acts and practices complained of herein to be in violation of the PHRA;

        (c)     enjoining and permanently restraining the violations alleged herein;

        (d)     entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

        (e)     awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

        (f)     awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

        (g)     awarding liquidated damages to Plaintiff under the ADEA;

        (h)     awarding punitive damages to Plaintiff under the ADEA;

        (i)     awarding Plaintiff such other damages as are appropriate under the ADEA and the PHRA;

(j)    awarding Plaintiff the costs of suit, expert fees and other

disbursements, and reasonable attorney's fees; and,

(k)    granting such other and further relief as this Court may deem just,

proper, or equitable including other equitable and injunctive relief providing restitution

for past violations and preventing future violations.


**CONSOLE MATTIACCI LAW, LLC**


Dated: January 31, 2022            BY:        /s/ Caren N. Gurmankin___
                                              Caren N. Gurmankin, Esq.
                                              1525 Locust St., 9th Floor
                                              Philadelphia, PA 19102
                                              (215) 545-7676

                                              Attorney for Plaintiff,
                                              Cathy Przyjemski

Exhibit "1"

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

**Received**

OCT 2 0 2020

PA Human Relations Commission
Philadelphia Regional Office

## COMPLAINT

| | |
|---|---|
| COMPLAINANT: | : |
| **CATHY PRZYJEMSKI** | : |
| v. | : |
| RESPONDENTS: | : |
| **TOWER HEALTH** | : |
| and | : |
| **READING HOSPITAL** | : |

Docket No.    202001117

1. The Complainant herein is:

   Name:        Cathy Przyjemski

   Address:     ██████████
                Mohnton, PA 19540

2. The Respondents herein are:

   Names:       Tower Health; Reading Hospital

   Address:     420 S. 5th Avenue
                West Reading, PA  19611

3. I, Cathy Przyjemski, the Complainant herein, allege that I was subjected to unlawful discrimination because of my age (56) and retaliation because of my age discrimination complaints, as set forth below.

**Discrimination**

**A. I specifically allege:**

[1]     I was hired by Respondents on or about February 24, 2004.

[2]     I had more than sixteen (16) years of service at Respondents.

[3]     My birth date is January ██, 1964, and I am age fifty-six (56).

[4]     I consistently performed my job duties in a highly competent manner.

[5]     I last held the position of Business Development and Marketing Specialist.

[6]     I last reported to Chrystal Schardt (40[1]), Interim Director of Marketing. Schardt reported to Lisa Hess (61), Vice President. Hess reported to Daniel Ahern (60), Executive Vice President, Business Development and Strategy.

[7]     Before reporting to Schardt, I reported to Maria Kammetler (56), Director of Marketing.

[8]     Neither Kammetler, Schardt, nor Hess had any role in my being hired at Respondents.

[9]     I was the oldest employee directly reporting to Kammetler.

[10]     I was one of the oldest employees indirectly reporting to Hess.

[11]     I was treated differently and worse, and in a more hostile and dismissive manner, than younger employees were treated.

[12]     Hess unjustly criticized my performance in ways that I did not observe her criticizing younger employees.

[13]     Kammetler told me that Hess has never had a kind word for me.

[14]     Kammetler told me that Hess "always look[ed] for reasons to pick on [me]."

---

[1] All ages herein are approximations.

[15]     Kammetler told me that Hess wanted to place me on a Performance Improvement Plan ("PIP"). Kammetler told me that she (Kammetler) would not place me on a PIP.

[16]     On March 24, 2020, in a text message with Kammetler, I complained that Hess "definitely treats me different than the others," "would love to have me gone," and "[c]learly she prefers to have a much younger group and it doesn't matter how much I prove myself, it will never be good enough."

[17]     Respondents failed to investigate my age discrimination complaint.

[18]     Respondents failed to remedy or prevent the age discrimination against me.

[19]     On April 21, 2020, Respondents placed me on "furlough."

[20]     Respondents placed me on "furlough" because of my age and/or my age discrimination complaints.

[21]     I was the only Business Development and Marketing Specialist employee reporting to Kammetler who was placed on "furlough."

[22]     When I was placed on "furlough," Respondents retained and did not place on "furlough" the following substantially younger employees. I was more qualified to perform these employees' positions.

> (a) Sara Lightman (33), Business Development and Marketing Specialist, hired in November 2019;
>
> (b) Chrystal Schardt (40), then Business Development and Marketing Specialist, hired in November 2017.

[23]     On June 25, 2020, Respondents hired Catherine Roth (36), Business
Development and Marketing Specialist.

[24]     On June 29, 2020, I returned to work following my "furlough."

[25]     On June 29, 2020, in a phone call with Kammetler, I was placed on a PIP.
My performance did not warrant a PIP. The PIP was for a period of forty-five (45) days. The
PIP contained false statements and misrepresentations. The PIP falsely stated that it was
"previously discussed with [me] in March" that my "performance and behaviors [were] trending
below expectations." Kammetler stated that, if Hess would have terminated me in a reduction in
force, she would have lost my position; but, if she brought me back to work following my
"furlough" and then terminated me, she would be able to keep the position and hire someone
else. I complained to Kammetler that the Business Development and Marketing Specialist that
employees Hess recently hired were in their thirties (30s), and were considerably younger than I
was. I complained that I believed this PIP was motivated by age.

[26]     I was the only Business Development and Marketing Specialist employee
who was placed on a PIP.

[27]     I was placed on a PIP because of my age.

[28]     Respondents failed to investigate my age discrimination complaint.

[29]     Respondents failed to remedy or prevent the age discrimination against
me.

[30]     On July 1, 2020, in a phone call with Kammetler, she told me that she did
not agree with the PIP that I was issued, and that it was driven by Hess.

[31]     On July 7, 2020, in a meeting with Erin Schultz (33), Human Resources
Business Partner, I complained of age discrimination and refuted the statements in the PIP. I

showed Schultz that there were no documents, or performance or disciplinary issues noted in my personnel file that would support the PIP. I showed Schultz text messages from Kammetler in which she told me that she would not place me on a PIP and other documents that refuted the PIP statements. I complained to Schultz that I felt that I was being discriminated against due to my age. I complained that the Business Development and Marketing Specialists that Hess recently hired were in their thirties (30s), and that I felt Hess was trying to force me out of Respondents. Schultz responded that she wanted to make sure I was safe.

[32]    Respondents failed to investigate my age discrimination complaint.

[33]    Respondents failed to remedy or prevent the age discrimination against me.

[34]    On July 10, 2020, in a phone call with Hess, I was informed that Kammetler had been terminated from Respondents and that my PIP had been removed.

[35]    On July 10, 2020, Respondents failed to promote me to Interim Director of Marketing. Instead of promoting me, Respondents promoted Schardt (40). I was more qualified for the position than the substantially younger employee who was promoted. I had no opportunity to apply for the position because the position was not posted. If the position would have been posted, I would have applied for it. Before Schardt was promoted, we held the same position. I had longer service time and more experience at Respondents than Schardt.

[36]    I received no explanation, including the selection criteria, as to why I was not promoted and the substantially younger employee was promoted.

[37]    Respondents failed to promote me because of my age and/or my age discrimination complaints.

[38]    On July 10, 2020, I began reporting to Schardt.

[39]     I was oldest employee reporting to Schardt.

[40]     Schardt and Hess unjustly criticized my performance in ways that I did not observe them criticizing younger employees.

[41]     I was piled on with projects and assignments that were not feasible to complete in the timeframe provided.

[42]     On July 25, 2020, an email from Hess, I was issued a document entitled "Expectations." My performance did not warrant an Expectations memorandum.

[43]     I was the only *Business Development and Marketing Specialist employee* who was issued an Expectations memorandum.

[44]     I was issued an Expectations memorandum because of my age and/or my age discrimination complaints.

[45]     On July 27, 2020, in a response to Expectations memorandum, I complained of age discrimination. At the bottom of the Expectations memorandum, I wrote the following: "I disagree that this is necessary and believe it is motivated by age."

[46]     On or about July 28, 2020, in a meeting with Hess and Schardt, and in an email from Schultz, my performance was unjustly criticized. Hess brought up alleged issues with my performance from the fall of 2019 that had not previously been addressed with me. I refuted the alleged issues and criticisms.

[47]     On August 25, 2020, I received an unfair performance evaluation from Hess. My performance did not warrant an unfair performance evaluation. The performance evaluation contained false statements and misrepresentations. I provided a rebuttal to inaccurate statements in my performance evaluation.

[48]     On August 26, 2020, in an email to Ahern, Schultz, Russell Showers (60), Vice President, Human Resources, and William Jennings (57), President and Chief Executive Officer, Reading Hospital, I resigned from my employment at Respondents, effective immediately.

[49]     I resigned from my employment because of the age discrimination and retaliation to which I was subjected at Respondents, and Respondents failure to remedy or prevent the age discrimination to which I was subjected.

[50]     Respondents did not ask me to reconsider my resignation decision or make any attempt to retain me as an employee.

[51]     Respondents assigned my job duties and responsibilities to substantially younger employees and/or employees who had not complained of age discrimination. I was more qualified to perform my job duties and responsibilities than the substantially younger employees who did not complain of age discrimination to whom Respondents assigned my job duties and responsibilities.

[52]     At the time of my termination, the following younger employees were retained in positions reporting to Schardt for which I was more qualified.

(a) Lightman (33);

(b) Roth (36).

[53]     Before I began indirectly reporting to Hess, I had no indication that Respondents found my performance unsatisfactory.

[54]     Ann Valuch (59), Marketing Director, previously resigned due to the hostile and crucial manner in which Hess was treating her.

[55]    Respondents subjected me to a hostile work environment because of my age and/or age discrimination complaints.

[56]    Respondents failed to promote me because of my age and/or my age discrimination complaints.

[57]    I resigned from my employment because of the age discrimination and/or retaliation to which I was subjected at Respondents.

[58]    Respondents' conduct and comments evidence a bias against older employees.

[59]    Respondents' conduct evidences a bias against employees who engage in protected activity.

[60]    Respondents' age discrimination and retaliation against me has caused me emotional distress.

[61]    **I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondents who are age forty (40) and over, and who have been discriminated against based on age (including intentional age discrimination and disparate impact on older workers) in connection with hiring, promotion, demotion, compensation, being subjected to a hostile work environment, position selection, and/or termination decisions.**

B.    Based on the aforementioned, I allege that Respondents have discriminated against me because of my age (56) and retaliated against me because of my age discrimination complaints, in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 623 *et seq.* ("ADEA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA").

4.      The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

   __X__          **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):** __(a); (d)__

   _____          Section 5.1 Subsection(s) _____

   _____          Section 5.2 Subsection(s)_____

   _____          Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.      Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

   __X__          **This charge will be referred to the EEOC for the purpose of dual filing.**

6.      The Complainant seeks that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory practice(s) and procedure(s).

(c) Remedy the discriminatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## <u>VERIFICATION</u>

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

10/19/20
(Date Signed)

*Cathy Przyjemski*
(Signature)    Cathy Przyjemski

Mohnton, PA 19540

Exhibit "2"

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:    **Cathy Przyjemski**

From:    **Philadelphia District Office**
**801 Market Street**
**Suite 1000**
**Philadelphia, PA 19107**

☐    *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601 7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **17F-2021-60597** | **Damon A. Johnson,**<br>**State, Local & Tribal Program Manager** | **(267) 589-9722** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]    More than 180 days have passed since the filing of this charge.

☐    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]    The EEOC is terminating its processing of this charge.

☐    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X]    The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Dana R Hutter*

**Dana R. Hutter,**
**Deputy Director**

November 4, 2021
*(Date Issued)*

Enclosures(s)

cc:    **For Respondent:**
**Owner/HR Manager**
**TOWER HEALTH; READING HOSPITAL**
**420 S. 5th Avenue**
**West Reading, PA 19611**

**For Charging Party:**
**Emily R. Derstine Friesen**
**Console Mattiacci Law, LLC**
**1525 Locust Street, 9th Floor**
**Philadelphia, PA 19102**
derstinefriesen@consolelaw.com